**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES<br>TRADING COMMISSION,<br>      Plaintiff,<br>vs.<br><br>M25 INVESTMENTS INC., et al.,<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:09-CV-1831-M<br><br><br>Referred to U.S. Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

Pursuant to an *Order of Referral* dated January 28, 2010, before the Court are the *Rule 12(e) Motion for More Definite Statement of Defendants Kear, Lyon and Seaman*, filed November 25, 2009, (doc. 19), and *Defendants' M25 Investment, Inc.'s and M37 Investments, LLC's Rule 12(e) Motion for More Definite Statement*, filed November 30, 2009, (doc. 22). Based on the relevant filings and applicable law, the motions are **GRANTED**.

**I. BACKGROUND**

On September 29, 2009, Plaintiff U.S. Commodity Futures Trading Commission ("CFTC" or the "Commission") filed this action against M25 Investments Inc. ("M25"), M37 Investments LLC ("M37"), Scott P. Kear, Sr. ("Kear"), Jeffrey L. Lyon ("Lyon"), and David G. Seaman ("Seaman") to enforce the Commodity Exchange Act ("CEA" or the "Act"), codified at 7 U.S.C. §§ 1-27f (1999 & Supp. 2009). (*See generally* Compl., doc. 1.) The Commission alleges that from at least December 2007 through the date of its complaint, the defendants fraudulently operated a foreign currency ("forex") trading firm in three states. (*Id.* ¶ 1.) The defendants allegedly engaged in solicitation fraud and made false statements in violation of 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6b(a)(2)(A)-(C), and 6c(b) and 17 C.F.R. § 32.9(a)-(c). (*Id.* ¶¶ 67-87 (Counts I through III).) The Commission also claims that all defendants except M37 committed fraud as a commodity pool

operator ("CPO") in violation of § 6o(1) and failed to register as a CPO or as an associated person ("AP") in violation of § 6m(1) and § 6k(2). (*Id.* ¶¶ 88-101 (Counts IV and V).) The defendants allegedly engaged in knowing or reckless conduct by

> (i) guaranteeing profits of two percent monthly interest and 24 percent annual interest when any such interest income would come from Defendants' speculative and risky trading; (ii) falsely claiming to be successful forex traders; (iii) failing to disclose that they did not have sufficient assets to make the promised interest payments and return of principal; (iv) failing to disclose that a significant portion of customer funds would not be used for trading; and (v) issuing or causing to be issued monthly account statements to customers showing the consistent 2% interest credits when Defendants' consistently lost customer funds trading or were not using their funds for trading.

(*See id*. ¶¶ 69, 76, 83, 90.) The Commission also seeks to hold the individual defendants liable for violations by M25 and M37 as controlling persons under § 13c(b) and as agents under § 2(a)(1)(B) and 17 C.F.R. § 1.2. (*Id.* ¶¶ 10-11, 63-65, 71-72, 78-79, 85-86, 92, 100.)

In November 2009, the defendants filed motions for a more definite statement. The Commission has responded to the motions. (*See* Docs. 31-32.) The individual defendants have filed a reply brief. (*See* Doc. 34.) The motions are ripe for determination.

## II. ANALYSIS

Defendants move for a more definite statement pursuant to Fed. R. Civ. P. 12(e) on grounds that the complaint fails to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed" if it is "so vague or ambiguous that the party cannot reasonably prepare a response." Whether to grant a motion for more definite statement is within the Court's sound discretion. *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998); *Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 653-54 (N.D. Tex. 2004).

**A. Rule 9(b)**

Here, the Commission alleges fraud under 7 U.S.C. §§ 6b and 6o.[1] The elements of fraud in enforcement actions are similar to the common law elements of fraud. *See Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 903 F.2d 1014, 1018 (5th Cir. 1990) (addressing § 6b); *CFTC v. Schafer*, No. H-96-1213, 1997 WL 33547409, at *8 (S.D. Tex. Dec. 23, 1997) (recognizing similar elements under both provisions). These elements include "(1) the making of a misrepresentation, misleading statement, or deceptive omission; (2) scienter;[2] and (3) materiality." *CFTC v. King*, No. 3:06-CV-1583-M, 2007 WL 1321762, at *2 (N.D. Tex. May 7, 2007) (quoting *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002)) (footnote added). Enforcement actions do not include a "reliance" element, however. *R.J. Fitzgerald & Co.*, 310 F.3d at 1328 n.6.

Because the Commission alleges fraud, its complaint must satisfy the heightened pleading requirements of Rule 9(b). *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). It provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The rule is interpreted strictly as requiring plaintiffs to identify the alleged fraudulent statements and the speaker, state the time and place of the statements, and explain how or why they were fraudulent. *Id.*; *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).

---

[1] Because the Supreme Court has recognized language similarities between 7 U.S.C. § 6b and "§ 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)" ("SEA" or "§ 10(b)"), *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 389 n.88 (1982), § 10(b) cases may provide appropriate guidance for fraud claims under § 6b.

[2] Scienter is an "intent to deceive, manipulate, or defraud", *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976), and may be satisfied in the present context by conscious behavior or recklessness. *See CFTC v. Equity Fin. Group LLC*, 572 F.3d 150, 159 (3rd Cir.), *cert. filed*, No. 09-647 (2009); *cf. SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) (addressing § 10(b)). Courts differ "about whether the antifraud provision in 7 U.S.C. § 6o(1)(A) includes a scienter requirement". *Equity Fin. Group*, 572 F.3d at 160 n.16 (citing cases).

The demanded particularity depends on the facts of each case. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (emphasizing that the ultimate meaning of Rule 9(b) is context-specific).

> [T]he sufficiency of pleadings under Rule 9(b) may depend "upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." Similarly, it has been widely held that where the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied.

*U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998) (quoting *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957)). When the complaint details the defendants' scheme and apprises them of the basic transaction(s) upon which fraud is alleged, an enforcement action may be less specific with respect to when and where the alleged fraud occurred. *See SEC v. Sharp Capital, Inc.*, No. 3:98-CV-2792-G, 1999 WL 242691, at *2 (N.D. Tex. Apr. 16, 1999). Rule 9(b) does not require plaintiffs who allege "a long-running scheme involving many false claims 'to list every false claim, its dates, [and] the individuals responsible.'" *U.S. ex rel. Hebert v. Dizney*, 295 Fed. App'x 717, 723 (5th Cir. 2008) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998)). However, "the allegedly great extent and complexity of a fraudulent scheme" does not excuse all failures to plead fraud with the required specificity. *Id.*

Although state of mind may be alleged generally, plaintiffs must do more than simply allege fraudulent intent or scienter; they must allege specific facts to support an inference of fraud. *Dorsey*, 540 F.3d at 339; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009) (explaining that conclusory scienter allegations which do not comply with Fed. R. Civ. P. 8 are not permitted). To support the required inference, the alleged facts must show a motive to commit fraud or identify circumstances

4

which indicate conscious or reckless behavior. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994).

**B. <u>Circumstances of Fraud</u>**

Defendants argue generally that the Commission's factual allegations about the who, what, where, when, and how, are not sufficiently specific. They contend that the complaint fails to comply with Rule 9(b) because the factual allegations (¶¶ 22-62) often refer to "defendants" generally rather than identifying a particular person or entity; it does not identify what conduct was knowingly or recklessly taken by whom. Citing *Southland,* they claim this type of "group pleading" is impermissible.

In *Southland*, the Fifth Circuit rejected a "group pleading" or "group published" doctrine which "in its broadest form allow[ed] unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles." 365 F.3d at 363-65. This type of group pleading would impermissibly allow a plaintiff to plead the first element of a fraud claim – making a misstatement or omission – without connecting a particular individual defendant to the fraud.[3] *Id.* at 363. Allegations against a general group of defendants are not "properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded." *Id.* at 365. While rejecting group pleading to impose liability on individuals, *Southland* also recognized that plaintiffs may permissibly attribute statements to business entities through principles of agency or corporate law. *Id.* at 365-67. However, plaintiffs may still not plead scienter against a general group. *Id.* at 366-67; *Ind. Elec.*

---

[3] Even when courts allowed this type of group pleading, plaintiffs had to plead "the roles of the individual defendants in the misrepresentations" with particularity "where possible". *Southland*, 365 F.3d at 364 (quoting *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987)).

*Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 533 (5th Cir. 2008). *See also Fener v. Belo Corp.*, 425 F. Supp. 2d 788, 802 & n.14 (N.D. Tex. 2006) (recognizing this type of group pleading); *SEC v. Brady*, No. 3:05-CV-1416-D, 2006 WL 1310320, at *4 & n.4 (N.D. Tex. May 12, 2006) (same). When a plaintiff impermissibly uses group pleading, an amended complaint may be required to comply with Rule 9(b). *See Fener*, 425 F. Supp. 2d at 792, 814-16.

Some factual allegations in this case refer to particular defendants.[4] However, most of them refer generally to "defendants" and require speculation about whose conduct is at issue.[5] Although each fraud claim asserts that the defendants engaged in fraudulent conduct in five specific respects (*see* Compl. ¶¶ 69, 76, 83, 90), the complaint mostly fails to connect a particular defendant or defendants to that conduct. For example, ¶ 2 alleges that "Defendants, directly and through others, fraudulently solicited customers" by guaranteeing two percent monthly interest (24% annually) and "claiming to be successful forex traders." Paragraphs 7 and 36 also allege generally that "defendants" guaranteed interest even though ¶ 23 specifically alleges that M25 and M37 made the guarantees through promissory notes. Paragraphs 5, 54, and 55 allege that "defendants" failed to make certain disclosures. Paragraphs 6 and 60 allege that "Defendants concealed their trading losses" by sending monthly statements which falsely assured customers that they were earning the promised two percent interest. The Commission used improper group pleading that fails to ade-

---

[4] (*See*, *e.g.*, Compl. ¶¶ 22-23 (addressing only M25 and M37); 27 ("Defendants Kear and Lyon solicited . . . ."); 30 ("Defendants, including Lyon and Seaman, who solicited . . . ."); 40 ("Defendant M37 successfully solicited . . . and M25 successfully solicited . . ..."); 41 ("M25 and M37 collectively received approximately $8 million from customers."); 53 ("Kear and Lyon controlled the trading of one of the forex and forex options trading account, and . . . Kear represented . . . that it was not trading on behalf of clients.").)

[5] (*See*, *e.g.*, Compl. ¶¶ 25 ("Defendants solicited customers in person and through word-of-mouth . . . ."); 26 ("Defendants' West Virginia representatives solicited . . ..."); 29 ("Defendants or their representatives solicited . . .."); 31 ("Defendants utilized power point presentations . . .."); 32 ("Defendants' websites expressly state . . .."); 33 ("Defendants offered . . .."); 38 ("Defendants also claimed to outperform other investments . . .."); 45 ("Customers relied upon Defendants' oral and written material misrepresentations and omissions . . ..").)

6

quately connect the who and the what.

The Commission argues that *Southland* does not apply because it dealt with the Private Securities Litigation Reform Act of 1995 ("PSLRA") rather than an enforcement action under the CEA. (*See* Doc. 31 at 16-17; Doc. 32 at 14-15.) Although the heightened pleading requirements of the PSLRA do not apply in this enforcement action, *Southland* considered Rule 9(b) principles that apply even in enforcement actions. *See SEC v. Kornman*, 391 F. Supp. 2d 477, 494 (N.D. Tex. 2005) (addressing Rule 9(b) in context of SEA); *Brady*, 2006 WL 1310320, at *2-4 (same). Any differences between the statutes does not make *Southland* inapplicable.

The Commission also claims that it properly used group pleading because this case does not involve public companies and their officers; it involves corporate shells and individual defendants who are inexperienced dabblers in foreign currency markets. (*See* Doc. 31 at 17-18; Doc. 32 at 16.) It claims that group pleading is proper due because the individual defendants are alleged to be controlling persons responsible for the fraud committed by the companies. (*See* Doc. 31 at 18.) These facts do not permit indiscriminately grouping the individual defendants with each other or the entity defendants; liability under a controlling person theory does not excuse non-compliance with Rule 9(b) when individual liability is also alleged. *See Dorsey*, 540 F.3d at 339-40. The Commission may properly use group pleading to attribute statements to business entities through principles of agency or corporate law and may appropriately group the two entities alleged to be a common enterprise when it is unable to separate the allegations against them. (*See* Compl. ¶¶ 1, 24, 17-21, 63-65).[6] Its complaint goes too far and combines all the defendants and sometimes

---

[6] The companies share the same business address, branch offices in three states, their Chief Executive Officer (Kear), Chief Financial Officer (Lyon), and Chief Operating Officer (Seaman). (*See* Compl. ¶¶ 17-21, 63-65.) "Kear, Lyon, and another principal own M25." (*Id.* ¶ 17.) Kingdom Life Holdings Trust ("Trust") is the majority shareholder of M25. (*Id.*) "Upon information and belief" of the Commission, Lyon and the Trust own M37. (*Id.* ¶¶ 18, 64.) Kear is director

7

unspecified representatives, however.

The Commission next argues that Rule 9(b) requirements are relaxed in complex cases of securities fraud.  (*See* Doc. 31 at 10; Doc. 32 at 8.)  Although the complexity and extent of the alleged fraud in this case may warrant less strict application of Rule 9(b), the circumstances do not justify use of improper group pleading.  The allegations as a whole do not adequately connect particular defendants to the alleged knowing or reckless conduct set out in paragraphs 69, 76, 83, and 90.[7]  The group pleading makes the Commission's allegations sufficiently vague or ambiguous so as to grant the motions for more definite statement.

Given the use of improper group pleading, the Commission must be required to replead its complaint to more particularly allege who did or said what.  In the present context, the complaint sufficiently alleges when (between December 2007 and the date of the complaint) and where (various states) the alleged fraud occurred, *see Sharp Capital, Inc.*, 1999 WL 242691, at *2 (recognizing that more general allegations of when and where may suffice in enforcement actions), and Defendants have not questioned the particularity of the how component.

## C. State of Mind

Defendants also contend that the complaint fails to allege scienter with sufficient particularity.  While recognizing that Counts I through IV of the complaint alleges knowing or reckless conduct, they argue that the factual allegations must also specifically allege knowing or reckless conduct.

---

of M25 and it appears that he "owns and controls both M25 and M37 through the [Trust], which he also owns and controls."  (*Id.* ¶¶ 19, 63.)  Lyon and Seaman are listed as a principal of M25 and M37.  (*Id.* ¶¶ 17, 20-21, 64-65.)

[7] Although Defendants contend that the factual allegations fail to allege that any conduct was knowingly or recklessly undertaken, the complaint's charging paragraphs adequately identify the knowing and reckless conduct (*see Compl.* ¶¶ 69, 76, 83, 90).

To adequately plead scienter, the Commission must allege specific facts to support an inference of fraud. *Dorsey*, 540 F.3d at 339. Because *Southland* rejected pleading scienter against a general group, the alleged state of mind of individual officials is at issue, not the collective knowledge of all officers and employees of the entity. *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533.

Here, each fraud count alleges that the defendants engaged in knowing or reckless conduct in specific ways. (Compl. ¶¶ 69, 76, 83, 90.) Although the complaint is deficient in connecting who said or did what, connecting specific individuals to the alleged knowing or reckless conduct set out in paragraphs 69, 76, 83, and 90, should satisfy the requirements for pleading scienter.

### III. CONCLUSION

The *Rule 12(e) Motion for More Definite Statement of Defendants Kear, Lyon and Seaman*, filed November 25, 2009, (doc. 19), and *Defendants' M25 Investment, Inc.'s and M37 Investments, LLC's Rule 12(e) Motion for More Definite Statement*, filed November 30, 2009, (doc. 22) are **GRANTED**. The Commission must file a more definite statement in compliance with this order and Fed. R. Civ. P. 9(b) no later than **5:00 p.m. on Monday, April 5, 2010**.

**SO ORDERED** on this 6th day of March, 2010.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

9